## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | Bankruptcy Case No. 13-10864 |
| ) | |
| MICHAEL K. O'MALLEY, ) | Chapter 7 |
| ) | |
| Debtor. ) | Honorable Janet S. Baer |
| ) | |
| BRENDA P. HELMS, not individually, but solely ) as the chapter 7 trustee of the bankruptcy estate of ) Michael K. O'Malley, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adversary Proceeding No. 16-00552 |
| ) | |
| METROPOLITAN LIFE INSURANCE ) COMPANY, MICHAEL K. O'MALLEY, ) TRACY ZELLMER, and TAMO, LLC, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION[1]

Brenda P. Helms, as chapter 7 trustee (the "Trustee") of the bankruptcy estate of Michael K. O'Malley ("O'Malley"), filed a six-count adversary complaint against Metropolitan Life Insurance Company ("MetLife"), O'Malley, Tracy Zellmer ("Zellmer"), and TAMO, LLC ("TAMO"). In the complaint, the Trustee seeks a declaratory judgment that O'Malley's interest in an excess benefit retirement plan is non-exempt property of the estate (Count I), turnover of the proceeds of the retirement plan (Count II), avoidance and recovery of certain post-petition transfers

---

[1] Shortly before the issuance of this Memorandum Opinion, counsel for debtor-defendant Michael K. O'Malley filed a motion indicating that O'Malley died on May 10, 2019 and requesting an order "holding in abeyance all proceedings in this cause" and ordering "supplemental briefing on motions pertaining to" his death. (Adv. No. 16-00552, Dkt. No. 139.) Despite the fact that O'Malley has died, the legal analyses and conclusions in this Memorandum Opinion are unchanged. To resolve this long-undecided adversary proceeding and to aid in the potential settlement or other resolution of the related adversaries that continue to pend, the Court denies the requests in the motion and issues the instant Memorandum Opinion.

related to the retirement plan (Counts III and IV), an award of damages for willful violations of the automatic stay (Count V), and disallowance of any claims filed by Zellmer or TAMO (Count VI). This matter now comes before the Court on the Trustee's motion for summary judgment on Counts I–V and O'Malley's cross-motion for summary judgment on all six counts of the complaint. For the reasons set forth below, the Court finds that there are no genuine issues of material fact, that the Trustee is entitled to judgment as a matter of law on Counts I–IV, and that O'Malley is entitled to judgment as a matter of law on Count V. Because neither Zellmer nor TAMO filed any proofs of claim, Count VI will be dismissed by the Court *sua sponte*.[2]

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), and (O).

## BACKGROUND

The material facts in this case are gleaned from the docket, the pleadings, and the summary judgment statements and responses, as well as the exhibits attached thereto. The following facts are undisputed or have been deemed admitted pursuant to Local Bankruptcy Rule 7056-2(B).

**A. O'Malley's Bankruptcy Filing and Schedules**

On March 19, 2013, O'Malley filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Code"). (Bankr. No. 13-10864, Dkt. No. 1.) Subsequently, on April 5, 2013, O'Malley filed schedules B and C on which he failed to disclose any interest in any retirement plans. (Bankr. No. 13-10864, Dkt. No. 13.) About two weeks later, on April 23, 2013, the 341 meeting of creditors was held. (O'Malley Resp. to Tr.'s Stmt. of Undisputed Facts, Adv.

---

[2] The deadline for filing proofs of claim was May 27, 2014.

No. 16-00552, Dkt. No. 103, ¶ 26.[3]) During the meeting, O'Malley's attorney stated that O'Malley would amend his schedules to include "a Met Life . . . defined benefit pension plan" and that 50% of that plan was pledged to O'Malley's former spouse Debbie O'Malley pursuant to a qualified domestic relations order (the "QDRO"). (Tr. of 341 Meeting, Bankr. No. 13-10864, Dkt. No. 167-1, at 23:22–24:3.) On June 4, 2013, O'Malley filed amended schedules B and C, listing a "Met Life Defined Benefit Pension Plan" of "Unknown" value and claiming exempt 100% of its value. (O'Malley Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 103, ¶¶ 28 & 29; Am. Sch. C, Bankr. No. 13-10864, Dkt. No. 35, at 5.)

About eight months later, on February 11, 2014, the 341 meeting concluded. (*See* Bankr. No. 13-10864, Dkt. No. 100.) Thereafter, on March 24, 2014, the Trustee filed a no-asset report. (Bankr. No. 13-10864, Dkt. No. 113.)

**B.     O'Malley's Retirement Plans: The Traditional Plan and the Auxiliary Plan**

O'Malley's employment with MetLife commenced in August 1981 and terminated in April 2005. (O'Malley Dep., Dkt. No. 92-5, at 10:23–11:7; MetLife Add'l Facts, Dkt. No. 108, ¶ 8.) As a MetLife employee, O'Malley participated in two separate retirement plans: the "Metropolitan Life Retirement Plan for United States Employees" (the "Traditional Plan") and the "MetLife Auxiliary Pension Plan" (the "Auxiliary Plan"). (O'Malley Dep., Dkt. No. 92-5, at 71:1–5, 71:20–23, 72:15-17, 75:3–11; MetLife Answer to Tr.'s Compl., Dkt. No. 92-1, ¶ 14.)

The Traditional Plan is intended to comply with the Employee Retirement Income Security Act of 1974 ("ERISA") and the provisions of the Internal Revenue Code governing tax-qualified pension plans. (Traditional Plan, Dkt. No. 92-6, at 3.)

---

[3] Unless otherwise noted, docket references in this Memorandum Opinion are to Adv. No. 16-00552.

3

The Auxiliary Plan is a nonqualified excess benefit plan governed by § 409A of the Internal Revenue Code. (Auxiliary Plan, Dkt. Nos. 92-7 & 108-3, at 2;[4] MetLife Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 108, ¶ 18.) It is "completely unfunded," and "[a]ll obligations under th[e] Plan are entirely separate" from the Traditional Plan. (Auxiliary Plan, Dkt. Nos. 92-7 & 108-3, at 13.) O'Malley's benefits under the Auxiliary Plan are subject to a QDRO issued in 2011, which provides for the assignment of a portion of the benefits to his former spouse. (O'Malley Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 103, ¶¶ 22–24.)

Pursuant to the Auxiliary Plan, participants can elect from a range of payment options, including different types of contingent survivor annuities. (MetLife Payment History Report, Dkt. No. 92-13, at 7–8.) A contingent survivor annuity provides monthly payments to a participant until his or her death; after the participant's death, a percentage of those payments go to the participant's designated beneficiary. (*Id.* at 10.) Without an election on file, participants who are married at the time distributions commence receive payments in the form of a default 50% contingent survivor annuity. (MetLife Add'l Facts, Dkt. No. 108, ¶ 2; Auxiliary Plan, Dkt. Nos. 92-7 & 108-3, at 5.)

C. **The Commencement of Distributions Under the Auxiliary Plan, the Trustee's Turnover Demands, and the Filing of the Adversary Proceeding**

O'Malley and Zellmer married on June 5, 2015. (O'Malley Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 103, ¶ 30.) On July 23, 2015, O'Malley designated Zellmer as his survivor and elected the 100% contingent survivor annuity payment option under the Auxiliary Plan. (*Id.* ¶ 31.)

---

[4] MetLife states that the operative version of the Auxiliary Plan was effective January 1, 2007, while the version filed by the Trustee has an effective date of June 30, 2006. (MetLife Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 108, ¶ 15.) Although there are no material differences between the two versions of the Auxiliary Plan, the Court includes citations to both in this Memorandum Opinion.

4

About a week later, on August 1, 2015, O'Malley's benefits under the Auxiliary Plan began, entitling him to net monthly payments of $3,614.72 after taxes and payments to his former spouse pursuant to the QDRO. (*Id.* ¶¶ 34 & 36.) O'Malley directed MetLife to send all of his eligible payments under the Auxiliary Plan to a TAMO bank account. (*Id.* ¶ 37.) Zellmer is the sole member of TAMO and was in control of TAMO at all times relevant to this adversary proceeding. (*Id.* ¶ 5.) The payments delivered to the TAMO account (the "TAMO transfers") totaled at least $46,991.36 between September 1, 2015 and August 1, 2016. (*Id.* ¶ 38.) The Court did not authorize the delivery of those payments to TAMO. (*Id.* ¶ 39.) Zellmer used the funds in the TAMO account to pay household bills, taxes, and other personal expenses. (Zellmer Dep., Dkt. No. 92-4, at 104:8–19.)

On July 13, 2016, MetLife received a turnover letter from the Trustee and complied with the demand by withholding payments under O'Malley's Auxiliary Plan. (Tr. Resp. to MetLife Add'l Facts, Dkt. No. 124, ¶ 15.) Pursuant to the Court's order dated March 16, 2018, MetLife deposited with the Trustee the withholdings for the period August 2016 to February 2018 totaling $68,679.68. (Dkt. No. 101.)

On July 14, 2016, the Trustee sent a letter to Zellmer and TAMO demanding turnover of all funds in their possession stemming from the Auxiliary Plan payments, but Zellmer and TAMO failed to comply. (O'Malley Resp. to Tr.'s Stmt. of Undisputed Facts, Dkt. No. 103, ¶¶ 43 & 44.) Thereafter, on August 5, 2016, the Trustee sent a letter to O'Malley demanding turnover of his interest in the Auxiliary Plan (including the proceeds delivered to TAMO), but O'Malley also failed to comply. (*Id.* ¶¶ 45 & 46.)

On August 31, 2016, the Trustee filed a six-count adversary complaint against MetLife, O'Malley, Zellmer, and TAMO. (Tr. Compl., Dkt. No. 1.) A year and a half later, in February

2018, the Trustee filed the instant motion for summary judgment on Counts I–V of the complaint, contending that: (1) O'Malley's interest under the Auxiliary Plan is non-exempt property of the bankruptcy estate; (2) MetLife, O'Malley, Zellmer, and TAMO are in possession, custody, and/or control of O'Malley's interest under the Auxiliary Plan, and its proceeds are subject to turnover to the estate; (3) the Trustee may avoid and recover both O'Malley's election of the 100% contingent survivor annuity payment option and his direction of payments to TAMO; and (4) O'Malley, Zellmer, and TAMO willfully violated the automatic stay. (Tr. Mot., Dkt. No. 91.) Subsequently, O'Malley filed a cross-motion for summary judgment on Counts I–VI, arguing that: (1) the Trustee's failure to object to O'Malley's exemption bars all counts of the complaint; and (2) the Auxiliary Plan is exempt. (O'Malley Mot., Dkt. No. 105.)

After the motions were briefed, the Court took the matter under advisement. Having reviewed the relevant documents, exhibits, and arguments, as well as applicable case law, the Court is now ready to rule.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056). The primary purpose of summary judgment is to avoid unnecessary trials where no genuine issues of material fact exist. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990). Thus, on a motion for summary judgment, the court must decide, based on the evidence, "whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010). A factual dispute is "material" only if its resolution might change the outcome under the governing law, and a factual issue is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the material facts are not in dispute, the only issue is whether the moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

The party moving for summary judgment bears the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (internal quotation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its initial burden, the party opposing the motion may not rest on mere allegations or denials; rather, its response must set forth specific facts demonstrating the existence of a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248; *Outlaw*, 259 F.3d at 837. Facts that are denied without evidentiary support for the denials are deemed admitted. Local Bankr. R. 7056-2(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see Williams v. City of Chi. Bd. of Educ.*, No. 10 C 7105, 2012 WL 3023313, at *4 (N.D. Ill. July 24, 2012) ("[T]o the extent that any of [a nonmoving party's] denials do not contain a citation to the record or the citation does not support the denial, those statements of fact by the [moving party are] deemed admitted."). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A careful review of the evidence in connection with the parties' motions for summary judgment reveals that there are no genuine issues of material fact in dispute. Thus, the only

question to be considered is whether the Trustee or O'Malley is entitled to summary judgment as a matter of law.

## DISCUSSION

### Preliminary Issue: Whether the Trustee's Complaint Is Barred

Before turning to the complaint, the Court addresses whether the Trustee can bring the adversary proceeding at issue. O'Malley argues that: (1) the Trustee's complaint is barred because she failed to object to the exemption of the Auxiliary Plan in a timely manner; and (2) the Trustee is judicially estopped from challenging the validity of the exemption.[5] As neither of these arguments has merit, the Court finds that the Trustee's complaint is not barred.

**A.    Bankruptcy Rule 4003(b) and *Taylor* Do Not Bar the Trustee from Challenging the Exemption Status of the Auxiliary Plan.**

O'Malley first argues that the Trustee's failure to object to his claim of exemption within the time permitted under Bankruptcy Rule 4003(b) bars the Trustee's complaint as a matter of law.[6] In this matter, however, the Trustee had no obligation to file an objection because O'Malley failed to properly claim the exemption in the Auxiliary Plan in the first instance.

Under § 541, all property of the debtor becomes part of the bankruptcy estate upon the commencement of a case. 11 U.S.C. § 541(a). Thereafter, a debtor may remove some of the property from the estate by claiming exemptions. 11 U.S.C. § 522(b). To exempt a piece of property, the debtor "shall file a list of property that the debtor claims as exempt," and "[u]nless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(l).

---

[5] Zellmer and TAMO also assert that the Trustee's action is time-barred. For the sake of simplicity, the Court refers only to O'Malley in connection with this argument.

[6] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

If the debtor fails to claim a piece of property as exempt, the rule of inclusion under § 541 controls, and the property remains in the estate. *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985).

Subject to exceptions not applicable here, Bankruptcy Rule 4003(b) provides the deadline for objecting to a claimed exemption. Pursuant to that rule, "a party in interest may file an objection to the list of property claimed as exempt *within 30 days* after the meeting of creditors held under § 341(a) is concluded or *within 30 days* after any amendment to the list or supplemental schedules is filed, *whichever is later*." Fed. R. Bankr. P. 4003(b)(1) (emphasis added).

It is uncontested that the Trustee did not file a timely objection under Bankruptcy Rule 4003(b). Citing *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), and *In re Kazi*, 985 F.2d 318 (7th Cir. 1993), O'Malley argues that the thirty-day time limit under Rule 4003(b) is an absolute bar to the Trustee's complaint. (O'Malley Resp., Dkt. No. 115, at 5–7.) In *Taylor*, the United States Supreme Court held that a trustee's failure to object to an exemption within thirty days of the initial creditors' meeting "prevent[ed] [the trustee] from challenging the validity of the exemption," even though the claimed exemption had no colorable statutory basis. 503 U.S. at 642–43. In *Kazi*, the Seventh Circuit held that under *Taylor*, "[f]ailure to file a timely objection is an absolute bar to consideration of the merit of the exemptions," "whatever the underlying merits of the debtors' exemptions and the debtors' actual knowledge of the trustee's opposition to their exemptions." 985 F.2d at 320.

Although the Court is bound by both *Taylor* and *Kazi*, the *Taylor* time bar does not apply in this matter because O'Malley failed to claim an exemption of the property at issue in the first place. "*Taylor* does not tell us *what* has been claimed as exempt—only that *whatever* has been claimed as exempt is beyond the estate's grasp once the deadline has elapsed." *Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir. 2008) (citing *Mercer v.*

9

*Monzack,* 53 F.3d 1, 3 (1st Cir. 1995)); *Trumble v. Burke (In re Miller),* No. 04-3365, 2013 WL 3808133, at *5 (Bankr. N.D. W. Va. July 21, 2013); *In re Hall,* 453 B.R. 22, 27–28 (Bankr. D. Mass. 2011). What had been claimed as exempt in *Taylor* was not disputed. 503 U.S. at 640–42 ("[The debtor] claimed the proceeds from her employment discrimination lawsuit as exempt by listing them in the schedule that she filed under § 522(l)."). Similarly, in *Kazi,* what had been claimed as exempt was not a question in that appeal. 985 F.2d at 322 ("Debtors placed the pension trust funds on their list of exemptions and stated on their schedules that they claimed the pension trust funds and IRAs as exempt . . . ."). In contrast, the parties here dispute whether the Auxiliary Plan was claimed as exempt.

To determine whether O'Malley claimed an exemption in the Auxiliary Plan, the Court looks solely at the face of his schedule C. The Supreme Court has warned that "*Taylor* does not rest on what the debtor 'meant' to exempt. Rather, *Taylor* applies to the face of a debtor's claimed exemption . . . ." *Schwab v. Reilly,* 560 U.S. 770, 788-90 (2010) (citation omitted) (refusing to expand "the universe of information an interested party [including the trustee] must consider in evaluating the validity of a claimed exemption"). "[N]either the Trustee nor the bankruptcy court need struggle to divine a debtor's 'intent' underlying claimed exemptions or look beyond the face of [s]chedule C to figure out what the debtor 'meant' to exempt." *Hall,* 453 B.R. at 30–31 (citing *Schwab,* 560 U.S. at 788). Thus, O'Malley's subjective intention is irrelevant.

One purpose of requiring a debtor to list property claimed as exempt is to "allow the trustee to decide which claims to challenge." *Payne,* 775 F.2d at 206. "[U]nless the claim of exemption contains sufficient detail to put the trustee on notice of questionable assertions, it will not be possible to administer the statutory scheme." *Id.* "Every [debtor] must do *enough itemizing* to

10